UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br>LUIS ANGEL TORRES-RAMIREZ,<br><br>Defendant. | 4:18-CR-40050-LLP<br><br>ORDER ON DEFENDANT'S MOTION<br>TO RECONSIDER DETENTION<br>DOCKET NO. 28 |

**INTRODUCTION**

Defendant Luis Angel Torres-Ramirez is before the court on an indictment alleging he used a fraudulent identification document in violation of 18 U.S.C. § 1546(b)(1). See Docket No. 1. Mr. Torres-Ramirez now seeks release pursuant to the Bail Reform Act, 18 U.S.C. § 3142. See Docket No. 28.

**FACTS**

The facts insofaras they are pertinent to the pending motion are as follows. Mr. Torres-Ramirez was arrested on June 20, 2018, in Brookings, South Dakota. See Docket No. 13. The court held his initial appearance on June 22, 2018. See Docket No. 8. Pretrial services did not interview Mr. Torres-Ramirez in preparation for the hearing, so the only information the court had about this gentleman was his criminal history, which is extremely minimal. He was convicted in 2004 of disobeying a stop light and not having a driver's license. In 2013 he was convicted of a misdemeanor charge of driving

under the influence. The court detained Mr. Torres-Ramirez based upon the government's request for detention and the defendant's representation that he did not seek release at that time. The primary reason relied upon by the government in support of its detention request is that the Department of Homeland Security Immigration and Customs Enforcement agency ("ICE") had lodged a detainer against Mr. Torres-Ramirez.

Following the filing of the instant motion for release, Mr. Torres-Ramirez was interviewed by pretrial services. The following information was contained in the pretrial report and is not disputed by the government. Mr. Torres-Ramirez, a native of Mexico, has lived in the United States since 2000 and was previously in Nebraska until 2005. He returned to Mexico to visit family in 2005 and then returned to Nebraska again in 2006. Two years ago he moved to Brookings, South Dakota, and has lived there since that time with his friend, who is also on pretrial supervision. He has relatives living in Kansas who are helping him financially, as does his friend with whom he lives. He is in excellent physical health, has no mental health concerns and no substance abuse issues. He completed alcohol classes in 2014 in connection with his DUI. He has no instances of failing to appear in court when required to do so.

Mr. Torres-Ramirez's Kansas relatives retained Bassel El-Kasaby, an immigration lawyer, to represent him in immigration proceedings. Mr. El-Kasaby testified telephonically at the hearing. He has been an immigration lawyer for 18 years and practices in Omaha, Nebraska. He

frequently presents continuing legal education programs on the subject of immigration law. These CLEs are attended by judges and lawyers.

Mr. El-Kassaby testified (citing section 236(c) of the Immigration and Naturalization Act, and CFR § 1003.19(a) – (e)), that the immigration court will not consider whether to grant Mr. Torres-Ramirez an administrative bond unless and until Mr. Torres-Ramirez enters the custody of ICE. Mr. El-Kasaby testified Mr. Torres-Ramirez is eligible for an administrative bond as he is not in the category of persons for whom detention in immigration court is mandatory. Mr. El-Kasaby testified that if Mr. Torres-Ramirez were released by this court and entered ICE custody, he could appear before an immigration court within a very short time to seek an administrative bond—probably within 7 to 10 days. Immigration courts can issue bonds on a personal recognizance basis, they can issue monetary bonds, they can impose electronic monitoring, or any combination of these factors.

If the immigration court does not grant Mr. Torres-Ramirez an administrative bond, the United States Attorney's Office can issue a writ of habeas corpus ad prosequendum, which the immigration court will honor. Such a writ can easily place Mr. Torres-Ramirez back into the custody of the United States Marshal's Service should he not be granted bond, or even if a removal order is issued. There is generally at the least a 2-3 day interval between the issuance of a removal order and the time a defendant in immigration court is actually placed on a plane to be deported. Often the

interval of time between the entry of a removal order and actual removal is longer.

ICE Special Agent Casey Cody also testified at the hearing. He affirmed much of Mr. El-Kasaby's testimony. Agent Cody testified if this court released Mr. Torres-Ramirez, he could probably appear before an immigration court for a bond hearing within two weeks. He also agreed there would be an interval of some few days, at the least, between the issuance of a removal order and Mr. Torres-Ramirez's actual removal. Furthermore, Agent Cody readily agreed he was able and willing to monitor the immigration hearings regarding Mr. Torres-Ramirez and able and willing to notify the United States Attorney's Office of developments in that court concerning Mr. Torres-Ramirez's custody status.

Agent Cody testified that Mr. Torres-Ramirez's "rap sheet" contained numerous aliases, but clarified that those aliases were all similar to his real name, just variations on that name. Furthermore, Agent Cody testified that the variations are not necessarily the result of dissembling on the defendant's part, but could represent the agent's understanding (or misunderstanding) of the defendant's name when making a data entry onto the NCIC site.

At the conclusion of the evidentiary hearing, the government moved to detain Mr. Torres-Ramirez based solely on risk of flight. The government argued Mr. Torres-Ramirez is accused of using fraudulent documents in this case, that we do not know his true name or his true identification, that he

cannot engage in employment and therefore cannot support himself, and that it is inappropriate for him to reside with someone who is also on pretrial release.

Defense counsel sought release, arguing there were conditions of release the court could fashion to address risk of flight. Counsel argued that risk of flight entails some type of volitional act on the part of the defendant and does not encompass the potential for involuntary removal by ICE. Counsel argued the ICE detainer is not determinative. Counsel pointed out that Mr. Torres-Ramirez has been fingerprinted by the government, so his identification is verified. Finally, counsel pointed out that if the immigration court grants Mr. Torres-Ramirez an administrative bond, he will be supervised by both this court and by the immigration court.

## DISCUSSION

### A.  An ICE Detainer is Not Dispositive

The Bail Reform Act ("BRA"), 18 U.S.C. § 3142, governs the court's decision whether to release a defendant pretrial. That statute provides a presumption of release for all "persons" except persons charged with certain specified offenses. See 18 U.S.C. § 3142(a), and (e)(3). The offense of use of a fraudulent identification document is not one of the offenses for which BRA provides a presumption of detention. See 18 U.S.C. § 3142(e)(3). Thus, in Mr. Torres-Ramirez's case, there is a presumption that he should be released, either upon his personal recognizance or upon a condition or combination of conditions if conditions are required to address risk of flight or danger to any other person or the community. See 18 U.S.C. § 3142(a) and (c). In cases in

5

which the presumption of release applies, the burden is on the government to demonstrate risk of flight (by a preponderance of the evidence) or danger (by clear and convincing evidence).  See 18 U.S.C. § 3142(f); United States v. Orta, 760 F.2d 887, 891 n.20 (8th Cir. 1985).[1]

Nor does BRA specify any different conclusion based upon a person's citizenship status.  Rather, if a person before the court is an alien or is within the United States unlawfully, *and* that the person may flee or pose a danger to any other person or the community, the court may detain the person for not more than 10 days and direct the attorney for the government to notify ICE.  See 18 U.S.C. § 3142(d).  If ICE fails or declines to take the person into its custody after 10 days, the court is to determine the question of detention the same as in any other case.  Id.

> Interpreting BRA, the Eighth Circuit has stated the following:
>
> Consistent with the intent expressed in legislative history, the statutory scheme of 18 U.S.C. § 3142 continues to favor release over pretrial detention.  Section 3142 provides four alternatives from which the judicial officer must choose:  (1) release on personal recognizance or unsecured appearance bond, or (2) release subject to certain conditions; or (3) temporary detention to permit, among other things, revocation of conditional release; or (4) pretrial detention.  The judicial officer most often will be deciding between the first and the second alternatives.  The statutorily mandated progression from one choice to the next is critical:  a judicial officer cannot determine that a detention hearing and the possible imposition of pretrial detention is appropriate merely by determining that release on personal recognizance will not "reasonably assure" the defendant's appearance at trial or "will

---

[1] The court may order detention *sua sponte* only for risk of flight or based on a serious risk that the defendant will obstruct or attempt to obstruct justice, or will threaten, injure, or intimidate or attempt to threaten, injure or intimidate a prospective witness or juror.  18 U.S.C. § 3142(f)(2).

6

> endanger" the community.  The judicial officer must also consider whether one of the codified conditions or any combination of conditions will "reasonably assure" the defendant's appearance and the safety of the community.  The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.

Orta, 760 F.2d at 890-891.  As indicated above, this analysis applies with equal force and effect to "persons" without regard to their citizenship status.  This is so for two reasons.

Longstanding legal precedent establishes that the term "person" includes citizens and noncitizens alike.  See United States v. Brown, 2017 WL 3310689 at *4 n.1 (D.N.D. July 31, 2017).  Thus, the fact that Congress chose to use the word "person" instead of "citizen" when writing BRA demonstrates a considered choice on the part of Congress to treat aliens and citizens the same (with the exception of the temporary detention referenced in part (d)), for purposes of pretrial detention.  Id.

Also, Courts have interpreted BRA's reference to the risk that a person will not appear in court as required—the "risk of flight" consideration—to require an act of volition on the part of the person.  United States v. Villanueva-Martinez, 707 F. Supp. 2d 855, 857 (N.D. Iowa 2010); United States v. Montoya-Vasquez, 2009 WL 103596 at *4 (D. Neb. Jan. 13, 2009).  This is based on the actual language used in BRA—"a serious risk that such person will flee."  See 18 U.S.C. § 3142(f)(2).  In other words, the risk that BRA is concerned with addressing is the risk that the person, once released, will volitionally choose not to make his future court appearances.  Involuntary detention, deportation, or removal by ICE is not what BRA contemplates courts

taking into consideration when making detention decisions. Villanueva-Martinez, 707 F. Supp. 2d at 857; Montoya-Vasquez, 2009 WL 103596 at *4.

The court concludes that the fact of an ICE detainer lodged against a defendant does not result in an automatic detention based upon risk of flight. It is one factor among many the court takes into consideration when making a determination whether to release or detain a defendant under BRA and, if release, under what conditions.

**B.    Application of the BRA to Mr. Torres-Ramirez's Request**

The court begins with the presumption of release applicable to Mr. Torres-Ramirez under BRA. In evaluating the government's request for detention, all parties agree there is no indication of dangerousness on Mr. Torres-Ramirez's part. Therefore, the court addresses itself solely to risk of flight. In evaluating this factor, the court considers (1) whether the government has demonstrated that there *is* a risk of flight by a preponderance of the evidence and, if so, (2) whether there are conditions or combinations of conditions this court can impose as part of a release order that would address the risk of flight. In determining whether to release or detain a person under BRA, the court is directed to consider the following factors bearing on risk of flight and/or dangerousness:

> (1)    The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> 
> (2)    the weight of the evidence against the person;

> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

See 18 U.S.C. § 3142(g).

Here, the court notes Mr. Torres-Ramirez has long-standing ties to the South Dakota-Nebraska area spanning nearly two decades. He has lived in the same apartment for two years with the same person. He has family in the Midwest who are part of his support network.

Mr. Torres-Ramirez has had two misdemeanor infractions with the law. He has never failed to make a court appearance on those two cases. The ICE agency and the United States Marshals Service have fingerprinted Mr. Torres-Ramirez, so we have verification of his identify. Furthermore, the court takes judicial notice that the Marshals usually photograph defendants as part of their processing procedure. Finally, the court ordered as a condition of release that Mr. Torres-Ramirez submit to giving a DNA sample to the Marshals.

Mr. Torres-Ramirez is accused via an indictment of using fraudulent documents in this case, a fact that shows there is probable cause to believe he

committed the offense. However, under the Constitution, he is presumed innocent of that charge until proven guilty beyond a reasonable doubt. Even if true, the other measures mentioned above (fingerprints, photos, and DNA), will serve to conclusively establish Mr. Torres-Ramirez's identity.

The court concludes that Mr. Torres-Ramirez is a good candidate for release. There is a risk of flight, but the court concludes that risk can be ameliorated by conditions of release contained in this court's separate order releasing Mr. Torres-Ramirez. Concerning the potential that a removal order may be issued, or Mr. Torres-Ramirez may fail to obtain an administrative bond from the immigration court, this court trusts the ICE agency and the United States Attorney's Office (both agencies of the Executive Branch), can coordinate their efforts so as to ensure Mr. Torres-Ramirez is brought back to court for future hearings herein.

## CONCLUSION

Mr. Torres-Ramirez's motion for reconsideration of detention [Docket No. 28] is granted. Mr. Torres-Ramirez is released in accordance with the order releasing defendant filed herewith. See Docket No. 33.

DATED September 5, 2018.

BY THE COURT:

*Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge